21-173-cv; 21-170-cv
Nnebe v. Daus; Stallworth v. Joshi

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of April, two thousand twenty-two.

PRESENT: GUIDO CALABRESI,
GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

_____

JONATHAN NNEBE, KHAIRUL AMIN, EDUARDO AVENAUT, NEW YORK TAXI WORKERS ALLIANCE, individually and on behalf of all others similarly situated,

*Plaintiffs–Appellants,*

v.                                                                 No. 21-173-cv

MATTHEW DAUS, JOSEPH ECKSTEIN, ELIZABETH BONINA, THE NEW YORK CITY TAXI AND LIMOUSINE COMMISSION, THE CITY OF NEW YORK, CHARLES FRASER,

*Defendants–Appellees.*\*

_____

ANTHONY STALLWORTH, PARICHAY BARMAN, NOOR TANI, THE NEW YORK TAXI WORKERS ALLIANCE, individually and on behalf of all others similarly situated,

---

\* The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

*Plaintiffs–Appellants,*

v.                                                            No. 21-170-cv

MEERA JOSHI, CHRIS WILSON, STAS SKARBO, CITY OF NEW YORK,

*Defendants–Appellees.*

_____

FOR PLAINTIFFS-APPELLANTS:      DANIEL L. ACKMAN, Law Offices of Daniel L. Ackman, New York, NY. (David T. Goldberg, Donahue, Goldberg, Weaver & Littleton, Brooklyn, NY, *on the brief*).

FOR DEFENDANTS-APPELLEES:      JAMISON DAVIES (Richard Dearing, Claude S. Platton, *on the brief*), for Georgia M. Pestana, Acting Corporation Counsel of the City of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Richard J. Sullivan, *Circuit Judge*, sitting by designation).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of the district court is AFFIRMED.

This appeal represents the latest installment in a long-running dispute concerning the procedures by which the New York City Taxi and Limousine Commission ("TLC") suspends the taxi licenses of drivers arrested for specified crimes. We assume the parties' familiarity with the underlying facts and prior proceedings in the case, to which we refer only as necessary to explain our decision.

In our first encounter with the case, we concluded that arrested drivers are not entitled to a pre-deprivation hearing before their licenses can be suspended, *see Nnebe v.*

2

*Daus* ("*Nnebe II*"), 644 F.3d 147, 158-59 (2d Cir. 2011), but that they are entitled to a meaningful post-suspension hearing to determine whether their continued suspensions are necessary for the safety of the general public, *id*. at 159-63. In a later appeal, we held that the post-deprivation hearings provided by the TLC were constitutionally deficient under the Due Process Clause of the Fourteenth Amendment because they focused only on the nature of the charged crime and did not consider the "individual circumstances underlying a taxi driver's suspension." *Nnebe v. Daus* ("*Nnebe IV*"), 931 F.3d 66, 83 (2d Cir. 2019). We therefore remanded the case with instructions to the district court to fashion an appropriate remedy, noting that "a hearing that encompasses some level of conduct-specific findings based upon the facts underlying the complaint and the driver's history and characteristics, for example, would be sufficient." *Id.* at 88.

The TLC unilaterally adopted a number of reforms in response to *Nnebe IV*. Among other things, under the current regulations, the TLC notifies drivers of their suspension and the availability of a post-suspension hearing to weigh the particular facts and circumstances of the case before an administrative law judge ("ALJ") of the City's Office of Administrative Trials and Hearings ("OATH"). If the driver requests a hearing, the TLC sets a fixed timetable for the TLC Chair to adopt or reject the ALJ's recommendation of whether to lift the suspension. Dissatisfied with those changes, plaintiffs-appellants (the "drivers") moved for injunctive relief that would have required

3

the TLC to adopt a number of additional reforms.[1] The district court agreed to a proposed injunction accelerating the timeline for the TLC to render a final decision on the merits of a given suspension hearing, but otherwise rejected the drivers' requests. *See Nnebe v. Daus* ("*Nnebe V*"), 510 F. Supp. 3d 179, 179 (S.D.N.Y. 2020). This appeal followed.

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "A district court abuses its discretion when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." *ACORN v. United States*, 618 F.3d 125, 133 (2d Cir. 2010) (internal citations and quotation marks omitted).

On appeal, the drivers argue that the district court abused its discretion by denying several proposed remedies: (1) redacting drivers' names in OATH rulings following post-suspension hearings; (2) requiring the TLC to publicize its recent reforms; (3) scheduling hearings automatically in all cases where a driver has been suspended; (4) abolishing or limiting review of ALJ decisions by the TLC Chair; and (5) requiring the TLC to perform

---

[1] The TLC voluntarily adopted some of the reforms that the drivers initially requested in their motion for a preliminary injunction. *See, e.g.*, *Nnebe V*, 510 F. Supp. 3d at 189 (noting that the TLC adopted a requested rule that "explicitly places the burden of proof on the TLC to show that continued licensure poses a direct and substantial threat to the public"). The drivers do not ask us for an injunction incorporating the reforms already adopted by the TLC. The drivers' appeal focuses solely on their demand for additional procedural protections beyond those adopted by the TLC in response to *Nnebe IV*.

4

a fact-specific analysis prior to suspending licenses. We address each of those proposals in turn.[2]

First, the drivers argue that the practice of printing drivers' names in OATH rulings discourages them from pursuing post-suspension hearings, and that a proper remedy must therefore include an order requiring redaction of drivers' names. To support that contention, they point to a declaration by a staff attorney in The Legal Aid Society's Worker Justice Project that states: "[a] factor that may dissuade drivers [from pursuing a hearing] is that OATH has consistently rejected driver motions that their decisions be made anonymous," resulting in OATH decisions that publicly disclose a driver's arrest even if the criminal charges are subsequently dismissed and the arrest record sealed. Joint App'x 153. But it is unclear how much the practice of publishing names actually dissuades drivers from pursing post-suspension hearings in view of the other factors

_____

[2] To the extent that the drivers contend that the district court applied an incorrect legal standard, we disagree. Although at times the language of the district court's ruling may suggest that the district court believed it was required or permitted to authorize only remedies that we had specifically directed the district court to address in *Nnebe IV*, the thrust of the district court's analysis made clear that it assessed whether the drivers' proposals were reasonably designed to remedy the constitutional violation we identified in that decision. We remanded the case for the district court to exercise its own discretion to determine an appropriate remedy under the facts and circumstances of this case, based on the record compiled over many years of litigation, and we are satisfied that the district court understood and complied with that directive. Moreover, the drivers expressly eschew the logical remedy for any failure of the district court to apply the correct standard – a remand with instructions to revisit the drivers' proposals in light of that standard – and instead ask us to step into the shoes of the district court and decide the scope of the relief in the first instance. We decline that invitation. Our role is to decide whether the district court abused its considerable discretion in declining to adopt each of the drivers' proposals, not to impose remedies that we might select if the discretion were ours to exercise.

identified in the declaration. *See id.* 153-54 (detailing several additional factors including the perceived futility of the hearing process, the timetable involved, and the complications that the hearing might have on the parallel criminal proceedings). It is also unclear to what extent drivers are unable to have OATH decisions redacted following the dismissal of criminal charges. *See, e.g., id.* 208 (documenting a case in which an unopposed motion to redact was granted following dismissal of the criminal case). The benefits of the proposed reform are too speculative to outweigh the TLC's interest in the uniform application of OATH rules and the presumptions in favor of open records in civil and administrative proceedings. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). On this record, we cannot conclude that the district court abused its discretion in concluding that redactions were not required to remedy the constitutional violation.

Second, the drivers proposed that the TLC be ordered to publicize the recent reforms in various ways. Under the current procedure, any driver whose license is suspended is provided with a notice informing the driver of the right to a hearing, the purpose of the hearing, and the types of evidence that will be considered by the ALJ. Thus, any arrested driver will receive direct notice of the current post-deprivation hearing procedures at precisely the moment those procedures become relevant to that driver. The added benefit of widely publicizing the recent reforms to every licensed taxi driver, the vast majority of whom will never be subjected to a suspension or become eligible for a hearing, is speculative at best. The district court acted well within its discretion in declining to require such publicity measures.

6

Third, the drivers asked the district court to order the TLC to schedule hearings automatically, in every case, subject to confirmation by the affected driver, arguing that such a procedure would result in more frequent hearings. Even assuming that such a default rule would nudge more drivers to pursue hearings, no evidence in the record permits us to determine the size of any such effect, let alone to what extent inducing more hearings would reduce the risk of erroneous deprivations. Once again, the suggested benefits of the proposal are too speculative for us to conclude that the district court was required to find that the benefits outweighed the added administrative burdens the proposal would have imposed. The district court thus did not abuse its discretion by rejecting the proposal.

Fourth, the drivers urged that the final authority of the TLC Chair to act on recommendations from ALJs should be abolished or otherwise curtailed. Under the current rules, the TLC Chair "may not reject or modify the Recommended Decision [of the ALJ] without setting forth a reasonable basis for doing so." 35 Rules of the City of New York § 68-15(d)(7). The drivers do not dispute statistics offered by the TLC that appear to show that the TLC Chair has handled recent cases evenhandedly, consistently adopting the ALJs' recommendations. Rather, their primary argument appears to be that a prophylactic remedy is necessary to prevent the possibility of the TLC Chair reinstituting unlawful practices in the future. *See* Appellants' Br. at 50-52. Based on the record, it was not an abuse of discretion for the district court to conclude that drivers now have a meaningful opportunity to overturn their suspensions on the merits and that the requested

7

injunction was unnecessary at this time.[3] *See Nnebe V*, 510 F. Supp. 3d at 193.

Finally, the drivers argued that the TLC should be required to conduct a "fact check" before summarily suspending a driver. *See* Appellants' Br. at 52-53. As an example of the kind of "check" they proposed, they suggested that the TLC could use a "numerical risk assessment score of the type routinely used in bail applications to help determine which drivers actually pose a direct and substantial threat." *Id* at 54. We previously concluded that "in the immediate aftermath of an arrest, when the TLC has minimal information at its disposal and the very fact of an arrest is cause for concern, the government's interest in protecting the public is greater than the driver's interest in an immediate hearing," and that, accordingly, "the post-suspension hearing affords adequate process, [and] no pre-suspension hearing is required." *Nnebe II*, 644 F.3d at 159. The drivers' present proposal for additional pre-suspension procedures fails for similar reasons. It was not an abuse of discretion for the district court to reject that proposal.

We have considered the drivers' remaining arguments and conclude that they are without merit. We have no occasion to address whether it would have been within the district court's discretion, on this record, to adopt all or any of the drivers' proposals for additional remedial measures; that issue is not before us. It was within the district court's

---

[3] The drivers also argue that review by the TLC Chair does not comport with the regulatory requirement that post-suspension hearings be conducted "before an administrative tribunal of competent jurisdiction." *See* N.Y.C. Admin. Code §19-512.1(a). We disagree. The regulations vest "[t]he commission" with the ultimate authority to suspend licenses, and nothing about the present scheme is inconsistent with the regulatory text. *Id.*

discretion to conclude that the TLC's reformed procedures sufficiently weigh the specific nature of the charges and individual characteristics of the charged driver in deciding whether there is a need for a continued suspension to protect the public.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court